# In re Petition of Cahill, Slevin and McVay.

1. Art. 5, section 12 of the Constitution of Pennsylvania, which declares that "in Philadelphia there shall be established for each 30,000 inhabitants one court, not of record, of police and civil causes," is not operative without further legislative action; it merely indicates the basis on which, at the proper time and in the proper manner, these inferior courts shall be established.

2. The Act of February 5th, 1875 (P. L. 5), passed to carry out the above constitutional provision, established twenty-four magistrates' courts, being one to every 30,000 inhabitants according to the census at that time, and further provided that "additional courts shall be established from time to time so as to provide one such court for each 30,000 inhabitants of said city, and that each of said courts shall be held by one magistrate:"

*Held,* That any additional number of courts, demanded by increased population, can only be established by further legislative action.

May 14th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

In the Supreme Court of Pennsylvania: 25 Miscellaneous Docket No. 1.

This was a rule granted upon petition of John Slevin, John H. Cahill and Mathew McVay, to show cause why a mandamus should not issue against Hon. WILLIAM S. PEIRCE, Hon. D. NEWLIN FELL and Hon. MICHAEL ARNOLD, judges of the Courts of Common Pleas for the city and county of Philadelphia, the court assigned for the purpose of opening, computing and certifying the returns of the election held in the city of Philadelphia, on Tuesday, February 17th, 1885, to compel them to issue a certificate of election to the twenty-six candidates for the office of magistrate receiving the highest number of votes at said election.

The facts of the case, as they appeared from the petition, were as follows: The Constitution of 1874, by Article V., section 12, abolished the office of alderman in Philadelphia county, and provided that "in Philadelphia there shall be established for each thirty thousand inhabitants one (magistrate's) court, not of record, of police and civil causes, with jurisdiction not exceeding $100." The Act of February 5th, 1875 (P. L. 56), which was passed to give force and effect to this constitutional provision, enacted as follows: "There are hereby established in Philadelphia, twenty-four courts, not of record, of police and civil causes, with jurisdiction not exceeding $100, and an additional court shall be established from time to time, so as to provide one such court for every 30,000 inhabitants of said city; each of such courts shall be held by one magistrate, whose term of office shall be five years; it shall be

the duty of the Councils of the City of Philadelphia, on or before the first day of March, A. D. 1875, and on or before the first day of January of every fifth year therein, and whenever else it may be necessary to fix the general location of each of the said courts by declaring between which streets or roads it shall be, so as to be most convenient for suitors and for the dispatch of public business."

In March, 1875, the councils of said city provided for the location of the twenty-four magistrate courts, in pursuance of the above Act.

By the official census of 1880, the population of the city of Philadelphia was 847,170 inhabitants, and in order to provide one magistrate for each 30,000 inhabitants the requisite number would be twenty-eight. By the death of two former magistrates during the continuance of their respective terms, their successors were elected for a period not expiring at the same time as the others.

On January 23d, 1885, the sheriff of Philadelphia county issued his proclamation for the election of twenty-two magistrates on February 17th, 1885, at which time petitioners, along with others, were voted for to fill these places. Upon the votes being counted by the judges assigned to that duty, the petitioners were found to be the highest unsuccessful candidates for the twenty-two vacant courts already established. They demanded that, as the population of the city had increased sufficiently to allow of four additional courts, the judges, in pursuance of the Constitution and legislative authority, should issue a certificate of election to the twenty-six candidates receiving the highest number of votes. The judges refused to issue such certificates, whereupon the petitioners obtained from the Supreme Court this rule to show cause.

*Charles B. McMichael*, Assistant City Solicitor, (*Charles F. Warwick*, City Solicitor, with him), showed cause.—1. The Constitution provided only that there should be established one court for every 30,000 inhabitants, and the Legislature having by the Act of 1875 exercised its power, the mandate of the Constitution has been complied with, and the Legislature has no power to create additional courts.

2. The Constitution does not execute itself, and it was necessary that an Act of the Legislature should be passed to establish the courts: Patterson *v.* Barlow, 10 P F. S., 54. This was done in 1875, and twenty-four courts were established and no more; and no subsequent Act of the Legislature has been passed establishing any additional courts.

3. Even if such additional courts existed they are new offices, and as the high sheriff in his proclamation announc-

[In re Cahill.]

ing the election only gave notice to the people that there would be an election for twenty-two magistrates, and that each elector had the right only to vote for fourteen of these twenty-two, the will of the people must be sustained and a new election is necessary: McLaughlin v. Cluley, 6 P. F. S., 270; Commonwealth v. Messer, MSS. 1863; McCrary on Elections, 87; Dillon on Municipal Corporations, 224; *In re* Smith, 41 Leg. Int., 124.

*Thomas R. Elcock* and *Wayne MacVeagh*, for petitioners.— There can be no doubt as to the meaning of the law that there shall be one court for every 30,000 inhabitants, and that in 1875 there should be twenty-four such courts, the population by the census of 1870 warranting that number. "And (says the Act) such additional courts shall be established from time to time, so as to provide one such court for every 30,000 inhabitants." This is clear and plain language, admitting of no misconstruction, requiring no further legislation, but launching the system at once into effect. If legislation was required at every 30,000 increase of the population, why pass such an Act, or use such language, providing for future increase?

What Act could be passed? Does it take an Act of Assembly to divide 30,000 into 847,170? If not, then the Act of 1875 is complete in every respect, and is a carrying out of the constitutional mandate.

" Shall be established from time to time," means without further legislation when the increase amounts to 30,000.

The Act contemplates, as does the Constitution, as the basis for the creation of the number of courts, the census of the United States, of which the courts will take judicial cognizance.

Chief Justice MERCUR delivered the opinion of the court, May 25th, 1885.

This application is against those judges of the Court of Common Pleas of the county of Philadelphia, who were assigned to open, compute, and certify the returns of the election held therein on the 17th day of February, 1885. The present purpose is to require them to count the votes cast at that election for the petitioners; but the ultimate object is to compel an increase of the number of magistrates and of magistrate's courts, designated by the Act of the Legislature.

The claim of the petitioners is based on Art. V., sect. 12 of the Constitution. It declares, "in Philadelphia there shall be established for each thirty thousand inhabitants, one court not of record, of police and civil causes." This clause of the Constitution does not profess to establish the court. It merely declares it shall be established. The Constitution does not as

to this execute itself. It does not designate in what part of the city or county the several courts shall be held, nor the number of magistrates of which each shall be composed. It merely indicates the basis on which, at the proper time and in the proper manner, these inferior courts shall be established. It thereby imposed on legislative power the duty of giving due effect to this provision of the Constitution. Art. V., sec. 5 of the Constitution provides that " whenever a county shall contain forty thousand inhabitants it shall constitute a separate judicial district, and shall elect one judge learned in the law," yet it was held in Commonwealth *ex rel.* Chase *v.* Harding, 6 Norris, 343, that this language did not of itself constitute a separate district whenever a county attained that number of inhabitants. It requires legislative action to provide for the due organization thereof. Many provisions of the Constitution are not made immediately and fully operative, so as to give effect at once thereto. They are mandatory on the Legislature to enact laws providing the manner for the due execution and enforcement thereof: Lehigh Iron Co. *v.* Lower Macungie Township, 31 P. F. S., 482. Until the Legislature acts and makes the provisions necessary to give the courts jurisdiction, their intervention cannot be invoked. In obedience to the constitutional obligation imposed on the Legislature the Act of 5th February, 1875, was passed. It provides that " there are hereby established in Philadelphia, twenty-four courts, not of record, of police and civil causes, with jurisdiction not exceeding $100, and additional courts shall be established from time to time so as to provide one such court for each thirty thousand inhabitants of said city, and that each of said courts shall be held by one magistrate." It further declares it to be " the duty of Councils on or before the first day of March, 1875, and on or before the first day of January of every fifth year thereafter, and whenever else it may be necessary, to fix the general location of each of said courts by declaring between which streets or roads it shall be, so as to be most convenient for suitors and for the dispatch of public business." It gives no power to Councils to locate any greater number of courts than is designated in the Act.

In stipulating that additional courts should be established, the Act manifestly intended it should be by legislative action. It expressly declares that in the election to be held in February, 1875, as many magistrates as there are courts in the city "and no more " shall be elected. It nowhere authorizes the number of magistrates to exceed the number of courts.

In March, 1875, the Councils provided for the location of the twenty-four magistrates' courts in pursuance of the Act cited.

No legislative action has since increased the number of magistrates' courts, or the number of magistrates to be elected; no

ordinance has been passed by Councils attempting to locate any additional number.

The declaration in the Act that additional courts should be established, would seem to have been unnecessary. It may have been to prevent any inference that the power of the Legislature to create additional courts was then exhausted. Certainly nothing therein contained indicates an intention of giving to any other body or tribunal, power to create additional courts or to provide for the election of an increased number of magistrates.

Although the increased number of inhabitants in Philadelphia be such as to require the Legislature to establish a greater number of magistrates' courts therein, yet it has not so done. The Constitution does not designate the specific manner in which the section cited shall be made operative. The sole authority to establish courts not in conflict with the Constitution, is vested in the legislative power: Patterson v. Barlow, 10 P. F. S., 54.

As no Act of Assembly provides a court for any one of these petitioners to hold, or in which he has any right to sit as a magistrate by virtue of the limited number of votes he received, it would be a useless act to open, compute, and certify, the votes cast for them.

Rule discharged at the cost of the petitioners.