# In re Contested Election of Law Judges in the Seventeenth Judicial District.
## Bredin's Appeal.
## Appeal of Marshall et al. (on Behalf of John M. Greer.)

The Act of August 7th, 1883, designating the judicial districts of the state enacted : " The Seventeenth District [shall be composed] of the county of Butler, to which the county of Lawrence is hereby attached, and shall have two judges learned in the law." . . . . .

*Held,* that the qualified voters in Lawrence county, as well as those in Butler county, were entitled to vote for law judges of the Seventeenth District at the general elections held in said counties in November, 1884, and that the two candidates receiving the highest aggregate vote cast in the two counties were elected.

March 20th, 1885. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett and Clark, JJ. Green, J., absent.

Appeals from a special Court of Common Pleas held in *Butler county :* Of October and November Term 1885, No. 37.

(1) Appeal of James Bredin from a decree of said court dismissing the petition of certain electors of Butler county, contesting the return of election for law judges for the Seventeenth Judicial District, held November 4th, 1884. The appellant, Hon. James Bredin, was a candidate at said election,

(2) Appeal of Kennedy Marshall et al. from the said decree, dismissing their petition contesting said election. This appeal was taken on behalf of John M. Greer, one of the candidates at said election, and was styled in some of the paper books, and in the opinion of this court, Greer's Appeal.

13 Outerbridge—22

This case was begun by the petition of Kennedy Marshall
and more than fifty qualified electors of the Seventeenth Ju-
dicial District, presented to the attorney general, averring,
inter alia, that at an election for two law judges of the Seven-
teenth Judicial District, held in the county of Butler on No-
vember 4th, 1884, certain candidates, five in number, were
voted for ; that on the same day an election for law judges of
the Seventeenth Judicial District was also held in the county of
Lawrence, at which the same candidates were voted for ; that
the Court of Common Pleas of Butler county thereafter
opened and computed the returns of the election in said
county ; that the Court of Common Pleas of Lawrence
county also met and computed the returns of election in
that county ; that each of said courts appointed return
judges, who met in Butler and together cast up the aggre-
gate vote of both the said counties of Butler and Lawrence,
and thereupon issued certificates of election to John McMichael
and Aaron L. Hazen as law judges elect, they having respec-
tively received the highest number of votes when the aggre-
gate vote of both counties was computed.

The petitioners averred " that the vote of Lawrence county
was improperly included in said count, and the return made
was a false return for that reason, Lawrence county not being
a part of the Seventeenth Judicial District;" that under the
Constitution and law, the vote of Butler county should alone
have been counted, and that John M. Greer and James Bre-
din having respectively received the highest number of votes
cast in Butler county, were lawfully elected.

The petitioners prayed that the Governor be advised of the
facts, to the end that he might convene a special session of the
Court of Common Pleas in Butler county (it being the more
populous of the two counties), to be held by the judges desig-
nated by law, for the purpose of adjudicating the questions
involved.

Whereupon the Governor, being notified by the attorney
general, convened a special court of Common Pleas, as prayed
for, composed of the three president judges of the adjoining
districts who resided nearest to the place of meeting, namely,
Hon. HENRY HICE, Hon. S. S. MEHARD and Hon. JAMES
B. NEALE.   This court met on December 22d, 1884, and from
the petition, answer and evidence found the following facts
and conclusions of law :

## STATEMENT OF FACTS.

The question at issue in this contest is the right of the qual-
ified electors of Lawrence county to vote for judge learned in
the law to be elected for the Seventeenth Judicial District of

this Commonwealth; or in other words whether under the law and the facts of this case, Butler county alone constitutes the Seventeenth Judicial District, and has the right of itself to elect at least one judge learned in the law.

The facts which we deem material are found in the following statement: By the last decennial census of the United States it appears that Butler county contained 52,536 inhabitants; by the same census it appears that Lawrence county contains 33,312 inhabitants; by Act of General Assembly approved August 7th, 1883, entitled "An Act to designate the several Judicial Districts of the Commonwealth as required by the Constitution," it was enacted that the Judicial Districts of the Commonwealth shall be numbered, composed, designated, and shall each have the number of judges respectively as follows: "The Seventeenth District (shall be composed of) the county of Butler, to which the county of Lawrence is hereby attached, and shall have two judges learned in the law, and the additional law judge shall reside at New Castle, in Lawrence county." And further in the last clause of the 3d section it was enacted that, "In all cases where a county is or shall be attached to an adjoining district, the qualified voters of such county shall be entitled to vote for the president judge and the additional law judge where provided for."

At the general election held on the 4th of November, 1884, candidates were voted for to fill the offices of judges learned in the law of said Seventeenth Judicial District, the terms of Hon. E. McJunkin, president judge, and Hon. James Bredin, the additional law judge (the present law judges of said Seventeenth Judicial District), expiring on the first Monday of January, 1885; at said election the candidates voted for to fill the offices of judges learned in the law of said Seventeenth Judicial District were James Bredin, John M. Greer, Ebenezer McJunkin, John McMichael and Aaron L. Hazen; and the votes voted for said office in Butler county were as follows.

|  |  |  |  |  |  | TOTAL. |
|---|---|---|---|---|---|---|
| McMichael | in Butler county, | 3815; | in Lawrence county, | 3437 | | 7252 |
| Hazen | " " | 3531; | " " | 3668 | | 7199 |
| Greer | " " | 4288; | " " | 2770 | | 7058 |
| Bredin | " " | 4457; | " " | 888 | | 5345 |
| McJunkin | " " | 2843; | " " | 331 | | 3184 |

Therefore the votes voted for said office in the two counties of Butler and Lawrence aggregate: For John McMichael, 7252; for Aaron L. Hazen, 7199; for John M. Greer, 7058; for James Bredin, 5345; for Ebenezer McJunkin, 3184 votes. Thereafter the Courts of Common Pleas of Butler and Lawrence counties respectively appointed return judges to com-

pute the returns of the election for judges learned in the law for the Seventeenth Judicial District; and said return judges computed the returns of votes cast for said offices at said election in both counties, and added to the votes cast in Butler county for said offices of judges learned in the law the votes cast in Lawrence county for said offices, and certified that John McMichael and Aaron L. Hazen were duly elected to the offices of judges learned in the law in the Seventeenth Judicial District.

The contestants complain that this return was false, and aver that the county of Butler constitutes the Seventeenth Judicial District, and that as Hon. James Bredin received the highest number of votes in Butler county he was thereby elected to the office of judge learned in the law for said district.

The contestants sought their remedy under the Act of the General Assembly approved May 19th, A. D. 1874.

### OPINION.

This case and the next (being the contest of Hon. John M. Greer and others in the same election), involve virtually the same facts and questions of law. The material facts were not disputed in either case, and by agreement both cases were heard together. We will not attempt in this opinion to dispute at length the several legal propositions contended for by the parties, or the authorities cited by the different counsel to support them, but will confine ourselves rather to a brief statement of our views and conclusions on the points we consider decisive of the case. . . . .

We now reach the main question, whether the qualified electors of Lawrence county have a right to vote for judges learned in the law who are to preside over the Seventeenth Judicial District. That they have such right is denied by the contestants in view of the 5th section of the 5th article of the Constitution of this Commonwealth. This section reads: "Whenever a county shall contain 40,000 inhabitants it shall constitute a separate judicial district and shall elect one judge learned in the law, and the General Assembly shall provide additional judges as the business of the district may require. Counties containing a population less than is sufficient to constitute separate districts shall be formed into convenient single districts, or if necessary may be attached to contiguous districts, as the General Assembly may provide." Under this section of the Constitution the contestants maintain that as Butler county contains 40,000 inhabitants it is, and of right ought to be, a separate judicial district, with the right to elect at least one judge learned in

the law, and that in such election Lawrence county cannot lawfully participate.  On the other hand the right is claimed by the respondents for the qualified electors of Lawrence county, on the ground, 1st, that Lawrence county is a part of the Seventeenth Judicial District to the extent or in the sense that the qualified electors of said county may take part in the election of the law judges of said district, and 2d, because of the express provision of the 3d section of the Act of General Assembly approved August 7th, 1883, in the following words: "And in all cases where a county is or shall be attached to an adjoining district the qualified electors of such county shall be entitled to vote for the president judge and an additional law judge where provided for."

The questions raised by these propositions are interdependent, and their answer is to be found in the true construction of the 5th section of the 5th article of the Constitution.  The purpose of this part of our fundamental law was to prescribe a rule for the division of the state into judicial districts.  Such a rule is indicated not by any merit which one section or municipal division has superior to that of another, but only by consideration of convenience.  It was not in its object to create rights, and if under it rights are given to one or to a class which are not given to all, it is not because a special grant was its purpose, but because it so happened in carrying out a general plan adopted for convenience.  In seeking the true construction of this section, therefore, we must leave out of mind the idea of a grant of right to the counties of the state, and keep in mind that the object of it is to provide a certain basis for dividing the state into districts convenient for the administration of justice.  The chief and underlying wish expressed in this section is that all counties in the state with sufficient business to occupy a judge learned in the law should constitute a separate judicial district.  The advantages sought by this plan seemed to have been, (a) to enable each county to elect a judge to preside over its courts, (b) to have a law judge resident in each county to whom the inhabitants could apply when necessary, and (c) to thereby be able to dispose of associate judges.  It was conceived that a county with 40,000 inhabitants would have sufficient business to occupy a judge learned in the law, and that number was therefore fixed for counties that would constitute separate judicial districts. But in the division of the state it would necessarily happen that some counties, for lack of sufficient inhabitants, could not constitute separate districts, therefore the favorite plan could not be adopted as to them, and it was directed that they should be formed into convenient single districts.

This, too, might in some instances be impracticable, for a

small county might be in the midst of counties having over 40,000 inhabitants. It was therefore necessary to make a further modification, hence it was provided that when necessary the General Assembly might attach such county to a contiguous district. When such attachment takes place it does not necessarily follow that the larger county loses all the advantages of a separate district, but we consider it loses the right of itself to elect the law judges for the district. Prior to such union the law judges of the district presided over the courts of the county that constituted it, therefore they presided over the courts of the attached as well; before their jurisdiction was confined to the single county, save for special purposes, therefore their jurisdiction is equal in both counties. Therefore, when judges learned in the law are to be elected in such a district, the electors of both counties have a common interest, and we consider a common right, to take part in their election. This right, we think, is secured to the qualified electors of the attached county in general terms by section 5 of the declaration of rights, and more plainly by the 15th section of the 5th article of the Constitution, in these words: "All judges required to be learned in the law, except the judges of the Supreme Court, shall be elected by the qualified electors of the respective districts over which they are to preside, &c." This section brings the election of law judges under the general rule growing out of the spirit of our institutions, that when an office is elective the officer to fill it shall be chosen by those over whom he is placed.

We conclude, therefore, that the 3d clause of the section under consideration operates as a modification upon the 1st clause when the contemplated necessity arises, and that when the attachment is made the larger county yields the advantage of a separate district far enough to preserve the substantial rights of the smaller county. In reaching this conclusion we are not unmindful of the case of the Commonwealth *v.* Dumbauld et al., 1 Out., 293, but we consider that the question which here arises was properly left open in the decision then made.

And now, January 1st, 1885, the petition is dismissed.

Hon. JAMES B. NEALE dissented from the judgment, and filed a dissenting opinion, in which he said, *inter alia*: It is hardly necessary, in assigning a reason for the radical change made by the framers of the Constitution of 1874, to say that it was the intention of the Constitution to subdivide the state into separate judicial districts, as far as possible to consist of one county, and where that was impracticable, into single judicial districts composed of counties containing less

than forty thousand inhabitants. The formation of separate districts, consisting of a single county was evidently the leading thought, as evidenced by the low numerical qualification attached, and the provision for decennial designations, thus clearly taking into view the certain natural increase of population, and the consequent rights of counties acquiring the requisite population to be detached from their temporary relation with other counties, either as components of single districts or attachments to separate districts. Hence, in the face of such an inevitable result, it is giving no strained meaning to the intention of the framers of the Constitution to say that in isolated, unavoidable instances some part of the rights of the people of an unclassified county should be merely suspended. Construing the fifth section of the fifth article by its plain words and unmistakable meaning, it is conclusively and only deducible that it intends to confer upon counties having *over* forty thousand inhabitants at least temporary advantages, not to be possessed and enjoyed by counties of *less* than forty thousand population.

These advantages consisted of the right to be *constituted* a "separate judicial district," "the right to have a resident law judge," and "the right not to have associate judges," as contradistinguished from all other counties having less than forty thousand inhabitants, either forming single districts or attached to separate districts—wherein the right to have a resident law judge does not expressly pertain to any one of those component or attached counties, but wherein the right to have associate judges for each county is not taken away or disturbed.

Whilst the Constitution cannot execute itself, yet the right to have it executed and its provisions carried out at appointed times, is made mandatory upon the general assembly. (Schedule section 14.) Pursuant to this duty the Act of General Assembly of 7th August, 1883, was passed, designating "The 17th judicial district of the county of Butler, to which the county of Lawrence is hereby attached, and shall have two judges learned in law, and the additional law judge shall reside in New Castle, in Lawrence county." By this Act one thing is provided for, viz., that "the additional law judge shall reside at New Castle," and so far as the Act contravenes, the other law judge may also "reside at New Castle," and there may be no judge whatever residing in Butler county. Hence it follows that the more populous county, with the right to be constituted "a separate judicial district," that to which the district designation is expressly given, is not only shorn of its ancient privilege of having associate judges, by operation of the fifth section of the fifth article, but as a possible, and in this case, an actual result, of the Act of 7th Au-

gust, 1883, is to be wholly deprived of the privilege of a law
judge residing within its territorial limits.    Therefore, to give
the interpretation to the statute of the 7th August, 1883, and
enforcement to its provisions as asked for by the respondents,
the large county, *the object of assured constitutional preference*,
is to be deprived of every privilege, except that its courts may
be presided over by a judge elected by the votes of the county
of inferior population—the attached county.   What is this
but the denial of right, of constitutional right, deprivation of
privileges, disfranchisement, not of an individual, but of the
people of a whole country, indeed of a district, both *de jure*
and *de facto*, without compensation of any kind.   The lion's
share of benefits appropriated and enjoyed by the weaker and
dependent protegé!    The attached county may have four resi-
dent judges ; the other, the superior in population, the first in
the consideration of the framers of the Constitution, as well as
of the statute, not one.

It has been observed that the clause in the fifth section of
the fifth article, defining what shall constitute a separate dis-
trict county and the prerequisites of a county entitled to such
designation is a complete clause, in no way depending upon
the context of that section, or of any other part of the instru-
ment for its ascertainment or classification under it.   It then
unavoidably follows that the condition of attachment can only
arise when the prerequisite condition of a separate district has
been established.   The trunk or tree must first exist before
the ingrafted branches can appear.   Nor is it necessary under
the fifth article that the designation of separate judicial dis-
tricts be immediately contemporaneous with the Act attaching
a smaller county. A pre-existing separate judicial district may,
by a subsequent apportionment or assignment, have another
or other counties attached to it, providing they are under
the numerical limitation of the fifth article.   Hence there was
nothing in the way of attaching Lawrence to Mercer county,
and subjecting it for nine years to a judicial administration in
the selection of which it would have had no voice—only a
year less than would occur by giving effect and force to the
position contended for by the petitioners. . . . . . But why
multiply words, or suggest additional reasons why the prayer
of the petition should be allowed, when the duty of this court
is so plainly indicated in the learned opinion of the Supreme
Court in the case of Commonwealth *v.* Dumbauld et al., 1
Out., 293, delivered by Mr. Justice PAXSON in full view of
just such facts possible to arise, and now involved in the pres-
ent case.

James Bredin took this appeal, assigning for error, inter

alia, the answers to a number of points presented by the contestant and the respondents, and the decree dismissing the petition.

Kennedy Marshall et al., took this appeal, assigning for error the decision and decree of the court.

*George A. Jenks*, with him (*J. F. Brittain*), for the appellant Bredin.

*J. W. Lee* and *Thomas Robinson*, for the appellants Kennedy Marshall, et al.

*S. W. Dana, D. B. Kurtz, Charles McCandless* and *John M. Thompson*, for the appellees.

Chief Justice MERCUR delivered the opinion of the court, October 5th, 1885.

These appeals were argued together. They are from the same decree. They present the same question. The contention arises under the Act of 7th August, 1883. It provides for the formation of the judicial districts of the Commonwealth; how each shall be numbered, composed and designated, and the number of judges each shall have. Section 1, *inter alia,* declares, "the seventeenth district" (shall be composed) "of the county of Butler, to which the county of Lawrence is hereby attached, and shall have two judges learned in the law, and the additional law judge shall reside at New Castle, in Lawrence County." Section 3 declares "in all cases where a county is or shall be attached to an adjoining district the qualified voters of such county shall be entitled to vote for the president judge and an additional law judge when provided for."

At the general election held in November, 1884, for the election of two judges learned in the law, for the 17th judicial district, the appellants, and John McMichael and Aaron L. Hazen, and another were candidates. The qualified electors of each of said counties, met at their respective legal places for holding elections, and voted for two judges, and the votes cast in each county were counted and ascertained at the county seat thereof. A return judge was appointed according to the requirement of the statute, in each county, to meet a similar officer appointed by the other county. These two met at the county seat of Butler county, at the time designated by statute and cast up the votes of both counties, and on a correct computation thereof, found that John McMichael and Aaron L. Hazen had received the highest number of votes, and issued certificates to them accordingly.

The appellants attack the constitutional validity of the Act of 1883, in permitting the qualified voters of the county of Lawrence to vote for law judges, and claim that the votes cast in that county, were improperly counted. If this view be correct, then appellants were duly elected and entitled to receive the certificates accordingly. The tribunal authorized by law to decide such a contest, decided adversely to the claim of the appellants, and the commissions have been issued to the other candidates named.

The appellants rest their case on Art. V. sect. 5 of the Constitution which declares "whenever a county shall contain forty thousand inhabitants, it shall constitute a separate judicial district, and shall elect one judge learned in the law ; and the General Assembly shall provide for additional judges as the business of the said districts may require. Counties containing a population less than is sufficient to constitute separate districts shall be formed into convenient single districts or if necessary may be attached to contiguous districts as the General Assembly may provide."

As the United States decennial census of 1880, showed the county of Butler contained more than fifty thousand inhabitants, the appellants claim that it alone thereby became entitled to become a separate judicial district, and that the electors thereof only, could participate in the election of judges learned in the law, assigned to said district. In other words although the county of Lawrence was legally united, annexed, or attached, in the formation of the district, yet the qualified electors thereof, are, by the Constitution, denied all right to vote for the judges, who for a full term of ten years, are to preside in the courts of their county. A proposition so startling as this, and one affirming such an unequal and unjust discrimination against all the legal voters of a county, ought not to be assented to, unless its correctness be clearly established.

The section of the Constitution relied on was before us for construction in the case of Commonwealth *ex rel.* Chase *v.* Harding et. al., 6 Norris, 343. It was carefully considered, and construction given thereto. It was held that this section did not of itself constitute a separate district when a county attains the number of inhabitants specified ; but it indicates the basis on which, at the proper time and in the proper manner, judicial districts may be created by the legislature. The unreasonable and mischievous effects of any other construction are well stated in the able opinion of Mr. Chief Justice AGNEW. The correctness of this construction has since been affirmed and approved by this court, in a distinct manner in Commonwealth *ex rel.* Burns *v.* Handley et al., 10 Out. 245 ;

and in sur petition of Cahill, Slevin and McVay, 16 W. N. C. 485.

That the section of the Constitution cited, was not intended to execute itself in the formation of judicial districts, but requires legislative action is clearly shown by sect., 14 of the schedule. It declares "the General Assembly shall at the next suceeding session after each decennial census and not oftener, designate the several judicial districts as required by the Constitution." Thus not only is the whole power of designating judicial districts given to the legislature, but it can be exercised only after each decennial census. Although a county, forming part of another district, may in fact, for many years, have the population stated as sufficient to constitute a separate judicial district, yet it must bide its time and await the action of the General Assembly.

In seeking for the true meaning and proper construction of Sect. 5, Art. V., we must consider other portions of the Constitution and so interpret the different parts as to produce harmony between them, and give a just and reasonable effect to the whole.

Sect. 15 of the same Article declares "all judges required to be learned in the law, except the judges of the Supreme Court, shall be elected by the qualified electors of the respective districts over which they are to preside, and shall hold their offices for the period of ten years, if they shall so long behave themselves well."

Who are qualified electors? Sect. 1, Art. VIII., answers this question. "Every male citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections." The qualifications following, refer only to citizenship, duration of residence and the payment of taxes. If then, persons possessing these qualifications, are entitled to vote at "all elections" and judges learned in the law shall be elected by the qualified electors of the respective districts over which they are to preside, it must be conceded that these sections intend to give and do give, to the electors of the county of Lawrence, the right to vote for their judges, unless that county is not within the 17th judicial district over which said judges are to preside. This conclusion is supported by Colvin v. Beaver, 13 Norris, 388.

Two things are indisputable. One is that the law judges of the 17th district do preside over and in the county of Lawrence. The other is that the county is not in any other judicial district. No judges, other than those of the 17th district are authorized to preside there. All writs issued from the several courts of record of the county of Lawrence must be tested in the name of the president judge of the district. The

commissions issue to these judges as judges of the 17th judicial district. If the county of Lawrence is not within the district of these judges, then the president judge thereof has no power to call upon the president or law judge of any other district to hold a term of court therein. The electors of the county of Lawrence are either within the 17th district with the right to vote in the election of judges learned in the law, to preside there, or else they are outside of that district, and in no other, and legally have no such judge to preside in the courts of their county. Such a result would not only be repugnant to the whole scope and spirit of the Constitution relating to courts, but would destroy that uniformity in the organization and operation of courts of equal grade, which it expressly declares shall be preserved. Thus section 26, of Art. V., *inter alia* declares "all laws relating to courts shall be general, and of uniform operation, and the organization, jurisdiction and powers of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process and judgments of such courts shall be uniform." The construction claimed by the appellants for section 5, denies to one county that uniform organization and operation which the constitution declares shall be enjoyed by all the counties, and which no law shall impair.

The authority given by law to the presiding judge constitutes an essential part of the organization of the court, and fixes a limit to its operations. This however is only one view of the case. It has another side, that side is the people. Uniformity in the organization and operations of a court is not for the exclusive convenience of the judge who administers the laws, but its main purpose is for the benefit of the people of every county, whose rights might be injuriously affected by an absence of this uniformity.

We cannot assent to the view of the appellants. It is in clear conflict with too many parts of the Constitution. It strikes down those equal rights and valuable privileges which are so highly prized by our people, and which the Constitution was intended to secure, and we think does secure.

We are not unmindful of the case of Commonwealth *ex rel.* Attorney General *v.* Dumbald et al., 1 Out., 293. It was twice argued, and each time decided differently. The last time by a bare majority of the judges of this court. It stands however as authority that under the legislation then existing, the county of Fayette was not entitled to elect associate judges. The question as to the right of the qualified electors of the county attached, to vote, was not before us for decision, and was not decided. We are therefore unanimously of the opinion that the qualified electors of the county of Lawrence

[Biddle v. Bank.]

were entitled to vote for judges learned in the law, at the election held on the 4th day of November, 1884, and that John Mc-Michael and Aaron L. Hazen received the greatest number of legal votes and are entitled to the office to which each was elected. It is further ordered that this decision be certified to the Secretary of the Commonwealth.

> Decree affirmed and the appeal in each case is dismissed at the cost of the respective appellant therein.