Opinion by
 

 Keller, P. J.,
 

 This claim was filed under the Occupational Disease Compensation Act of July 2, 1937, P. L. 2714, 77 PS §1101, which was a supplement to the Workmen’s Compensation Act of June 2, 1915, P. L. 736, as amended. The claimant is the widow of Thompson Plaugher, an employee of defendant, who died on February 19, 1939. He himself had filed a claim for disability (No. 78,230) under the same act, but died before a hearing was had by the referee. Following which, on March 21, 1939, this claim (No. 80,193) was filed by his widow on behalf of herself and minor daughter, then less than six years old. She averred that his death was the result of an occupational disease in a hazardous employment, and that he was last exposed to said hazardous occupation on February 2, 1938.
 

 The defendant filed an answer in which it denied that Thompson Plaugher’s death occurred as the result of any occupational disease incurred in its employ, or as a result of any disease included in paragraph (c) of section 2 of the Occupational Disease Compensation Act aforesaid, incurred in or connected with his employment by it; it averred that his death was caused by a decompensated rheumatic heart disease, totally unconnected with his employment by the defendant. It also alleged that said Occupational Disease Compensation Act was unconstitutional, but apparently did not press this point.
 

 Hearings were had before a referee on June 27, and October 17 and 18, 1939, the contention of the claimant being that, as a result of his employment, her husband suffered from carbon disulphide poisoning which aggravated the rheumatic heart disease, that was the primary cause of his death; while the defendant contended that the employee died from rheumatic heart disease and mitral stenosis, unaffected by any carbon disulphide poisoning, exposure to which in defendant’s employ was denied.
 

 
 *375
 
 The referee filed his report on February 27, 1940, finding that the claimant’s husband died of rheumatic heart disease and mitral stenosis, aggravated and accelerated by carbon disulphide poisoning contracted by him, while in the employ of the defendant, in an occupation involving direct contact with and exposure to carbon disulphide fumes; and awarded compensation to the claimant. On appeal to the board, the referee’s findings of fact, conclusions of law and award of compensation were affirmed. The defendant then appealed to the Court of Common Pleas of Delaware County.
 

 On May 29, 1941 that court, without passing on the legal questions before it, entered its order, remitting the case to the Workmen’s Compensation Board with directions to submit the medical questions raised by the defendant’s exceptions to the Medical Board provided for in section 402 of the Act of June 21,1939, P. L. 566, for determination in accordance with the provisions of section 420 of that act.
 

 The claimant appealed to this court.
 

 Of the four questions involved, as stated by the appellant, two raise the question of the constitutionality of the Act of 1939, supra, as respects (1) the provisions relating to the
 
 selection
 
 of the Medical Board (section 402), and (2) those, relating to the
 
 operation
 
 of the Medical Board (section 420).
 

 We allowed counsel for the United Mine Workers of America (District No. 2), as amicus curiae, to present an oral argument and file a brief, urging the unconstitutionality of those sections of the Act of 1939, supra; and the Attorney General to be heard and file a brief upholding their constitutionality. And the constitutionality of those sections was ably argued, pro and con, by counsel for the appellee and appellant, respectively.
 

 In the view we take of the case, however, we are not, at this time, required to pass on the constitutionality
 
 *376
 
 of either of those sections, and will not now do so, further than to say that we have no doubt that the expression in section 402, ‘deans of all legally recognized medical schools in Pennsylvania,’ means the deans of all reputable and legally incorporated medical schools or colleges in Pennsylvania, recognized as such
 
 by the Board of Medical Education and Licensure of the State of Pennsylvania.
 
 See Acts of June 3, 1911, P. L. 639, secs. 4 and 5; July 25, 1913, P. L. 1220; May 24, 1917, P. L. 271, sec. 1; April 20, 1921, P. L. 158, sec. 3; July 19, 1935, P. L. 1329, sec. 2; 63 PS §§402-405. And that the provision that the Governor shall request such deans to serve as a committee to nominate [that is, name] ten physicians especially qualified by training and experience for membership on the Medical Board, and certify its nominations, [that is, send the names of said ten physicians] to the Secretary of Labor and Industry, does not take the appointment of the Medical Board — to consist of three members — from the Secretary of Labor and Industry — with the approval of the Governor — section 402(b), and place it in the hands of the deans of said medical schools. And, as to section 420, that we see nothing contrary to the Constitution of this Commonwealth in a provision giving to a board of three physicians the power to make conclusive findings on medical questions of fact
 
 [1]
 
 — subject to review by the courts as to the sufficiency of the evidence supporting said findings — rather than to a board of laymen, having no special training in medicine, such as the Workmen’s Compensation Board.
 

 
 *377
 
 It is not well to generalize on constitutional questions until the specific provisions attacked come properly before the court in litigation in, which they are involved.
 

 This claim arose under the Act of 1937, supra. While that act was specifically repealed by the Act of 1939, supra, sec. 504, it was also provided in section 502 of the later act, that, “Nothing in this act shall affect or impair any rights of action which have accrued before this act shall take effect” — that is, before October. 1, 1939; and it is provided in section 503, that, “If any provision of this. Act shall be held by any court to be unconstitutional, such judgment shall not affect any other section or provision of this Act.”
 
 [2]
 

 Consequently if this claimant became entitled to compensation, under the Act of 1937,. by reason of the death of her husband from an occupational disease within the diseases named in section 2 of the act — and carbon disulphide is one of them, — it is the same as carbon bisulphide (Sec. 2, par. (c) ), with the Greek prefix ‘di’ instead of the Latin ‘bi’ — contracted while in the employ of the defendant, then that right, to enforce which she had already brought proceedings, could not be taken away from her by the subsequent repeal of the act, nor affected except as to procedural matters contained in the repealing act. We are of opinion that sections 402 and 420 of the Act of 1939 are procedural —Article IV deals generally with procedure. But the claimant’s right is affected only to the extent that the procedural matters set forth in those sections are made effective by the action of the officers and persons who are called upon to take the necessary preliminary steps therein set forth. Section 402 of the Act of 1939 did not name, set up and create a medical board. It only established the method by which such a medical board could, be created and named and set up. Section 402 is not self-executing. Before it becomes effective, the
 
 *378
 
 Governor must first act, by requesting the deans of all legally recognized medical schools in Pennsylvania to serve as a committee and name physicians especially qualified by training and experience for the medical board.
 

 Then the deans of said medical schools, having received such request, must act upon it, and certify the names of ten such physicians — of whom three must be roentgenologists and three must be pathologists — to the Secretary of Labor and Industry.
 

 Then the Secretary of Labor and Industry must select three physicians, one of whom is a roentgenologist and one a pathologist, and submit their names to the Governor for his approval. If for any reason he is unable or unwilling to select three such physicians out of the list certified to him, he may, perhaps, call on the committee of deans for further nominees.
 

 Then the Governor must act on the names so submitted to him by the Secretary, and approve them.
 

 All this must be done before there is any medical board to pass on and decide medical questions of fact under section 420, and wanting such action, there is no medical board to function under the act.
 

 To date, there is no such medical board. Whether the Governor has failed to request the deans to act as a committee, or the deans have refused to act and certify the names of ten physicians to the Secretary of Labor and Industry, or the Secretary has refused to select three physicians out of the list certified to him by the deans, or the Governor has refused to approve the physicians selected by the Secretary, we have no means of knowing. We only know that although two years and five months have passed since the Act of 1939 became effective, no medical board has been appointed to perform the functions given it under the provisions of that act.
 

 The Governor cannot be compelled to act, either to
 
 *379
 
 request the deans to serve as a committee, etc., or to approve the physicians selected by the Secretary: See Mandamus Acts of June 8, 1893, P. L. 345; April 28, 1899, P. L. 84; March 19, 1903, P. L. 32; June 19, 1913, P. L. 526; May 13, 1925, P. L. 664;. 12 PS §1911;
 
 Appeal of Hartranft et al.,
 
 85 Pa. 433. Nor can the deans of recognized medical colleges be
 
 required
 
 to act as such committee. They are not officials of the Commonwealth and the service asked of them is purely voluntary and honorary. It cannot be forced or compelled.
 

 It is not an unheard of thing in this Commonwealth for legislation to be enacted which provides for the doing of certain things before it goes into effect.
 

 Even the Constitution which is the basic law of the Commonwealth contains provisions which are not self-executing and require action by the legislature or by the courts before they become operative or effective. Thus, in
 
 Wattson v. Chester & Delaware River R. Co.,
 
 83 Pa. 254, it was held that Section 23 of Article III, vesting in the courts the power to change the venue in civil and criminal cases “to be exercised in such manner as shall be provided by law,” did not become effective until a suitable law had prescribed the manner of its exercise. In
 
 Com. ex rel. Chase v. Harding,
 
 87 Pa. 343, it was held that Article V, sec. 5, prescribing that whenever a county shall contain forty thousand inhabitants it shall constitute a separate judicial district, and shall elect one judge learned in the law, etc., did not of itself constitute a county a separate judicial district when it attained that number of inhabitants but that it must wait until the passage by the legislature of a judicial apportionment act creating it a separate judicial district; and that the County of Lackawanna which was carved out of the County of Luzerne, remained a part of the 11th judicial district, until the legislature made it a separate judicial district. See also along the same line,
 
 Contested Election of Judges,
 
 109 Pa. 337, 7 A. 86;
 
 O’Connor v. Armstrong,
 
 299 Pa.
 
 *380
 
 390, 149 A. 655. In re
 
 Petition of Cahill et al.,
 
 110 Pa. 167, 20 A. 414, held that Article V, sec. 12, which declares that in Philadelphia there shall be established a magistrate’s court for each 30,000 inhabitants, did not become sélf-operátive, so as to increase the number of magistrates, without legislative action. See also,
 
 Cusick’s Election,
 
 136 Pa. 459, 20 A. 574;
 
 Lewis v. Lackawanna County,
 
 200 Pa. 590, 50 A. 162. And in
 
 Moskowitz’s Registration Case,
 
 329 Pa. 183, 196 A. 498,
 
 [3]
 
 the Supreme Court held that the explicit provision in section 9 of Article VIII, that “any person convicted of willful violation of the election laws: shall, in addition to any penalties provided by law, be deprived of the right of suffrage absolutely for a term of four years,” although
 
 imposing a mandatory duty upon the courts
 
 (p. 189), was inoperative and ineffective to deprive one so convicted of his right to vote, unless the court in imposing sentence included therein the constitutional deprivation of his right of suffrage; and that the latter could not be added to the sentence after the expiration of the term.
 

 Therefore, until a medical board is appointed, pursuant to the directions of section 402, there is none, and the courts cannot direct the Workmen’s Compensation Board to refer medical questions of fact to the determination of a board that does not exist. Workmen’s compensation cases cannot be indefinitely suspended, like Mahomet’s coffin, awaiting the action of officials, etc., under section 402.
 

 What, then, is the practical effect of this inaction?
 

 The Pennsylvania Occupational Disease Act of 1939, like its prototypes, the Workmen’s Compensation Act and the Occupational Disease Compensation Act of 1937, makes the Workmen’s Compensation Board the ultimate fact finding body (sections 418, 423 and 427), subject only to review by the courts as to whether its
 
 *381
 
 findings of fact are sustained by sufficient, competent evidence, and as to medical questions of fact, to the provision, (sec. 423), that the Workmen’s Compensation Board shall accept the findings of the medical board as conclusive upon it. Until there is a medical board functioning under the act, this proviso or exception is in abeyance and the Workmen’s Compensation Board can proceed as if there were no such provision in the act, and make its findings of fact with the same force and effect as if the provision cited from section 423 did not exist. The general authority conferred by the act is not affected by the qualifying provision respecting a non-existent board.
 

 Accordingly, the order of the court below is reversed and the record is remitted to that court to hear and determine whether the findings of fact of the Workmen’s Compensation Board are sustained by sufficient competent evidence and whether they support the conclusions of law and the award of compensation. The court may direct the board to certify and forward to it the testimony incorporated into the record by
 
 reference,
 
 but not actually transcribed and sent up with the testimony, referred to in the opinion of the court below.
 

 [1]
 

 (1) Whether the claimant contracted or is suffering from the occupational disease alleged; and, in death cases, whether or not death was caused by such disease. (2) If it finds that the claimant has contracted or is suffering from the occupationál disease alleged, its
 
 opinion
 
 as to the extent of the disability suffered by the claimant. [This would seem not to be a medical question of fact, as to which its finding would be final]. (3) Such other medical facts as appear warranted by the evidence (Sec. 420(c) ).
 

 [2]
 

 With an exception not here material.
 

 [3]
 

 Cf.
 
 Shields v. Westmoreland County,
 
 253 Pa; 271, 98
 
 A.
 
 572.