Unora *v.* Glen Alden Coal Co., Appellant.

Argued March 18, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Franklin B. Gelder,* with him *J. Hayden Oliver* and *Gilbert S. McClintock,* for employer, appellant.

*Ralph H. Behney,* Counsel, *S. H. Torchia* and *C. A. Whitehouse,* Assistant Counsel, and *Robert E. Woodside,* Attorney General, for Commonwealth.

*Thomas B. Noonan,* with him *Thomas L. Kennedy, Jr.,* for appellee.

OPINION BY HIRT, J., July 17, 1952:

Claimant's petition alleged that he became totally disabled from anthraco-silicosis on October 1, 1947. He then was 70 years old. He claimed compensation from defendant, his last employer, under the Occupational Disease Act of June 21, 1939, P. L. 566, as amended by the Act of May 14, 1949, P. L. 1379, 77 PS §1201, et seq. The Referee upon sufficient competent medical testimony found that claimant's disability, though total, was not due solely to anthraco-silicosis and accordingly denied compensation under §301(e) of the Act, 77 PS §1401. On appeal, the Board set aside the findings and order and, after appointing an impartial medical specialist, remanded the claim to the Referee for further proceeding. At a subsequent hearing the medical expert, from an examination of claimant, testified that he is totally disabled and solely from anthraco-silicosis. Though two medical witnesses for defendant at the same hearing gave it as their opinion that claimant's disability was largely due to arteriosclerosis and a hypertensive cardio-vascular disease, the Referee nevertheless accepted the opinion of the physician appointed by the Board, and awarded compensation. On a second appeal to the Board, the award in substance was affirmed. Subsequently, on defendant's petition the Board remitted the *record* "to the [newly appointed] Medical Board for consideration and a report thereon" in accordance with §420 of the Act of June 21, 1939, P. L. 566, 77 PS §1520.

Solely from a review of the medical testimony in the record and without further hearing, the Medical Board unanimously found that although claimant suffered from anthraco-silicosis, his disability from that cause was but partial and that an arterio-sclerotic heart disease seriously contributed to his disability. The Workmen's Compensation Board, on these findings, vacated the award and disallowed the claim as it was obliged to do under the Act.

Section 402(d) of the Act as amended, 77 PS §1502, provided: "The medical board shall have the power and *its duty shall be to hear and determine controverted medical issues* in cases arising under this act in accordance with the provisions of section 420 and its reports and findings shall be conclusive except that, upon appeal to the courts, the courts may inquire into the question whether the findings were based upon sufficient competent evidence." We have emphasized the language of the Act which gives rise to the present controversy. The lower court on appeal held, in substance, that under the above provision it was the duty of the Medical Board to conduct a hearing of the parties and their witnesses; and since the Medical Board determined the controverted medical issues solely from the evidence in the record of this case without taking further testimony, it did not comply with the duty imposed upon it by law. On a holding that the order, based upon the Medical Board's report and findings was a nullity the court remitted the record to the Workmen's Compensation Board "for appropriate action".[1] The order will be reversed.

[1] The Occupational Disease Act of 1939, supra, in §402 provided for the selection and appointment of three qualified physicians to act as a Medical Board. The 1949 amendment continued the provision with changes in method for selecting and appointing the members of the Board. Section 420 prescribed the powers and duties of the Board on reference of a case to it for determination

Section 420 provided that on appeal from the decision of the Referee involving a review of the Referee's findings on medical questions the Workmen's Compensation Board, without passing upon the findings, *shall* refer the case to the Medical Board "for *determination* of the medical facts." Under §420 it was further provided: "The medical board *may* appoint one or more impartial physicians, pathologists or roentgenologists to examine the claimant" and "shall have the power to subpoena witnesses, to administer oaths, and to order the production of . . . records." The section also provided for testimony "to the medical board either orally or in writing" of persons directed by it "to make an examination of claimant or an autopsy of a decedent", subject to cross-examination by parties interested. The Act does not refer to testimony of any other class of witnesses although under §§421 and 422, 77 PS §§1521, 1522, the Medical Board had the authority to conduct public hearings.

The primary purpose of the above sections of the Act was to substitute a board of medical experts for the lay Workmen's Compensation Board, in an effort to secure right decisions of controlling medical questions in this class of cases where concomitant diseases or physical changes attributable to advancing years obscure the question whether total disability has resulted wholly from occupational disease. *Plaugher v.*

---

of the medical facts. It was not until June 1, 1950, that the Governor appointed three physicians, one of whom was a roentgenologist and another a pathologist to constitute the Board. The Board had no existence prior to that date. Sections 402 and 420 of the Act were repealed by the Act of January 2, 1952, P. L. 1811. The sections have been before us for construction on only two occasions; in *Plaugher v. American Viscose Corp.*, 147 Pa. Superior Ct. 372, 24 A. 2d 698, which arose after conception of the Medical Board but *before* it came into being, and in the present case *after* its demise by the above repeal.

*American Viscose Corp.,* 147 Pa. Superior Ct. 372, 24 A. 2d 698. From the mandatory provisions of the Act requiring the submission of the case to the Medical Board for conclusive determination of the medical issues, it is clear that what the legislature intended was to give the Medical Board the same functions and powers exercised by the Workmen's Compensation Board in other classes of cases.

In general on appeal from the decision of a Referee the allowance of further hearing before the Workmen's Compensation Board is within the discretion of that Board. Cf. *Vonot v. Hudson Coal Co.,* 285 Pa. 385, 132 A. 347. The same provision was written into the Occupational Disease Act in §423, 77 PS 1523, which authorized the Workmen's Compensation Board, except as to a review of the Referee's findings on medical questions "to examine the testimony taken before such referee" and, based solely thereon, to substitute its findings for those of the Referee. That Board had authority to take additional testimony but only "if it deem [further hearings] proper" in the exercise of its discretion. We may assume that the legislature recognized the practical limitations on the services of the three physicians, which would have to be observed in the demands to be imposed upon them as a Medical Board. It would have been unreasonable to expect them to undertake the Herculean task of conducting additional hearings on appeals of the numerous cases in which eighteen Referees throughout the State hear the parties and their witnesses in claims for compensation from occupational disease. In our view the legislature as indicated by the Occupational Disease Act as a whole, intended that the Medical Board should have the power to direct an investigation through physicians appointed by it and to conduct public hearings, but the procedure was intended to be optional with the Board and not mandatory. The Referee, in the taking of testimony

on a claim petition, is the agent of the Workmen's Compensation Board. *Morgan v. Sanderson et al.,* 146 Pa. Superior Ct. 37, 21 A. 2d 475. And when the Medical Board was substituted by operation of law for the Workmen's Compensation Board as the ultimate fact-finding body on the medical issues, the Referee, as to the testimony taken by him, must be regarded as the agent of the Medical Board also. If the legislature intended otherwise it is reasonable to assume that it would have provided for hearings before the Medical Board de novo.

The lower court erred in its construction of the provision of §402(d) of the Act imposing the duty on the Medical Board "to hear and determine controverted medical issues." The provision, viewed in the light of the Act as a whole, did not make it mandatory for the Medical Board to conduct hearings either de novo or to supplement the testimony before the Referee. Even if the above provision were ambiguous the construction which we have placed upon it would be valid as most reasonable in contemplation of the "true object and purpose of the Act." Cf. *Ottavi v. Timothy Burke Strip Co.,* 140 Pa. Superior Ct. 389, 14 A. 2d 188. But the language is not ambiguous when considered with the provisions of the Act as a whole. An identical power "to hear and determine" all matters coming before our Supreme Court was provided by the Act of June 16, 1836, P. L. 784, 17 PS §41. It will hardly be contended that the legislature in that Act contemplated the taking of testimony by our Supreme Court except in rare instances.

The motion to quash the appeal is refused; the order of the lower court is reversed and the order of the Workmen's Compensation Board reinstated.