Stampone, Appellant, *v.* Anthony Dally & Sons, Inc., et al.

616

Argued June 12, 1958.  Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

A. *Albert Gross,* with him *Milton J. Goodman,* and *Gross & Herster,* for appellant.

*Wilson H. Oldhouser,* Assistant Attorney General, and *Thomas D. McBride,* Attorney General, for Commonwealth, appellant.

*Edmund P. Turtzo,* with him *Daniel F. Joella,* for claimant appellee.

OPINION BY WOODSIDE, J., March 18, 1959:

This case arises under The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §1201 et seq.

Claimant, Mary Stampone, widow of Michael Stampone, filed her petition for compensation which was first heard by Referee David W. Phillips on November 22, 1954. The defendant offered no medical evidence at the hearing.

The claimant's evidence showed that she was the widow of Michael Stampone; that he had been employed by various slate quarries from 1925 to November 1953, and that during that time he was exposed to a silica hazard. In November of 1953 an x-ray examination of the decedent disclosed the presence of a cancerous mass in the right lung. The right lung was removed by surgery on December 2nd, and decedent died twenty-six hours after the operation. The physi-

cians who testified on behalf of the claimant stated that death was caused by an extensive lesion carcinoma in the right lung field, and the referee found that this was the primary cause of death. After the removal of the right lung, the vital capacity of the left lung was not sufficient to maintain the proper oxygenation of the blood. Ordinarily the vital capacity of one lung would be adequate to sustain life. The decedent, however, had a 66% vital capacity immediately before the operation. The evidence presented before the referee in the first hearing revealed various physical conditions which could have accounted for the reduced vital capacity of the left lung. The autopsy report showed that death resulted from a decreased respiratory count due to compression of the lung structure. It would be possible to find from the evidence that the reduced vital capacity of the left lung could have been due to a dilation of the heart, to hypertrophy of the heart and shifting of the heart to the left, to bronchiectasis with fibrosis of the lung structure, or to anthracosis (silicosis). The referee found, however, that the silicosis from which defendant suffered was a major contributory cause and an accelerating factor in the death of the decedent.

The defendant and the Commonwealth both appealed from the referee's findings of fact and conclusions of law. The Workmen's Compensation Board, after reviewing the record concluded: "The medical evidence submitted in behalf of the claimant is not entirely satisfactory and lacks the corroborating data normally considered necessary to establish silicosis. There exists, to our mind, a substantial doubt arising out of this testimony." The board, therefore, remanded the case to the referee for the purpose of appointing an impartial physician to examine the hospital and other records, to read the testimony taken in the case,

and to appear before the referee for examination and cross-examination.

At a rehearing before Referee John R. Lanahan, on March 27, 1956, Dr. John F. Giering, the impartial physician, appeared and testified. Dr. Giering concluded, "I feel that it is impossible to state that pneumoconiosis (silicosis) was a contributory cause of death." The referee then found that "silicosis or pneumoconiosis was not the sole or contributing cause of death of the decedent" and, therefore, concluded that claimant's petition should be dismissed. The board affirmed the findings of fact, conclusions of law and order of the referee and dismissed the claimant's appeal. The claimant then appealed to the Court of Common Pleas of Northampton County. That court took the position that the appointment of an impartial physician was improper, since it was not then specifically authorized under The Pennsylvania Occupational Disease Act, and for this reason reversed the board and remanded the record for rehearing. The defendant appealed to this Court.

We are of the opinion that the order of the court below must be reversed. This is a case in which the board has found in favor of the defendant. In proceedings under The Occupational Disease Act, the burden is upon the claimant to satisfactorily present to the board the necessary elements to sustain the award. *Rozauski v. Glen Alden Coal Co.*, 165 Pa. Superior Ct. 460, 69 A. 2d 192 (1949). It was imperative, therefore, for the claimant in this case to produce sufficient evidence to convince the compensation authorities that the decedent died as a result of silicosis. If the evidence offered to sustain the burden is not believed by the board, or if, in the opinion of the board, such evidence is so indefinite and so inconsistent that it cannot be accepted for the basis of a finding which would

sustain an award, no compensation need be given. *Tokash v. Early Foundry Co.*, 157 Pa. Superior Ct. 467, 43 A. 2d 553 (1945).

The board may decline to grant an award even though the employer, as in this case, has presented no evidence, providing the claimant's evidence is not believed or is, in the opinion of the board, too indefinite and inconsistent to be accepted as a basis for findings which would sustain an award, and in this regard the board was not required to accept even uncontradicted testimony as true. *Jaloneck v. Jarecki Mfg. Co.*, 157 Pa. Superior Ct. 609, 43 A. 2d 430 (1945).

Where the decision of the Workmen's Compensation Board is against the party having the burden of proof, the question before this court is whether the board's findings of fact are consistent with each other and with its conclusions of law and order, and can be sustained without a capricious disregard of competent evidence. *Sulewski v. Baldwin Locomotive Works*, 168 Pa. Superior Ct. 346, 77 A. 2d 715 (1951) ; *Jaloneck v. Jarecki Mfg. Co.*, supra; *Plaugher v. American Viscose Corp.*, 151 Pa. Superior Ct. 401, 30 A. 2d 376 (1943) ; *Witters v. Harrisburg Steel Corp.*, 183 Pa. Superior Ct. 450, 132 A. 2d 762 (1957).

It is apparent in the present case that the Workmen's Compensation Board, whose findings of fact the courts cannot set aside unless they find a capricious disregard of competent evidence, found upon appeal from the decision of Referee Phillips after the first hearing, that the medical evidence was insufficient to establish silicosis as the cause of the decedent's death. The board could have at that time dismissed the petition for compensation. Instead of doing so, however, it remanded the case to the referee for the appointment of an impartial physician.

The board now clearly has the power to appoint an impartial physician since The Occupational Disease Act was amended by the Act of February 28, 1956, P. L. (1955) 1095, §1, 77 PS 1520, by adding Section 420 which specifically authorizes such a procedure.

This amendment became effective March 30, 1956. The board had remanded the case November 23, 1955, and the referee's hearing at which the impartial physician's report was received into evidence was March 27, 1956, which was subsequent to the enactment of the amendment but prior to its effective date. The referee's findings, and, of course, the board's decision were subsequent to the effective date of the amendment. Thus assuming, but not deciding,[1] that the board's only statutory authority to direct the appointment of an impartial physician can be found in the amendment, we have here a case in which the referee and board *used* the report of an impartial physician at a time when the act as a result of the amendment clearly authorized the use of such report, but they *received* the report in evidence at a time when the amendment was not yet effective. The report of the impartial physician was received by the referee without objection from the claimant whose counsel cross-examined the physician at great length.

Although a statute is normally construed to operate prospectively only, if it is curative, remedial or procedural only, it may be applied to litigation instituted prior to its effective date. *Pope v. Pa. Thresher-*

---

[1] The defendants contend, not entirely without merit, that the board had the power to appoint an impartial physician prior to the amendment of 1956 under Section 419 of The Occupational Disease Act, 77 PS 1519, which provides: "The Board or a Referee, if it or he deem it necessary may, of its or his own motion, either before, during, or after any hearing, make investigation of the facts set forth in the petition or answer."

*men & Farmers' Ins. Co.,* 176 Pa. Superior Ct. 276, 278, 107 A. 2d 191 (1954). The appointment of an impartial physician and the use of his report is a procedural matter.

The use of an impartial physician is a recognized aid to determine the truth of a controversy. Courts should not seek reasons to deny the referee and board this valuable aid in determining the truth. It would be an unreasonable construction to hold that the referee after having been given by statute, the right to use an impartial physician's report, would have been required to reappoint the physician and have him re-report his findings to the referee. Under the circumstances of this case, we think the referee and board could use the report of the impartial physician which they had before them when they made their findings and decision.

The court below decided that section 419 (see footnote) did not give the board the power to appoint an impartial physician, nor had the referee or board the right to use the report they had before them and, therefore, concluded that "The findings of fact of Referee John R. Lanahan upon which he dismissed the instant claim, which were affirmed by the Board in its Opinion filed January 30, 1957, obviously were based upon the testimony of Dr. Giering, the impartial physician. There being no legal basis for his appointment, his testimony was incompetent. It is impossible for the Court to disregard Dr. Giering's testimony and hold that the findings of the Referee as affirmed by the Board on the second appeal are supported by competent evidence in the record."

Since the board has found against the party having the burden of proof, the question before us, as we have pointed out above, is not whether the findings of the board are supported by competent evidence, but wheth-

er its findings are consistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of competent evidence. See cases cited above.

A careful review of the medical evidence before the board at the end of the first hearing shows that it would not be a capricious disregard of competent evidence on the part of the board to have found that the claimant had failed to establish that the decedent died as a result of silicosis. The board could have dismissed the claimant's petition at that time. Instead of so doing, the case was remanded and the claimant received a second opportunity to establish her burden through the testimony of an impartial physician. The board found that the claimant failed to establish that the decedent's death was the result of silicosis and, therefore, she cannot recover under The Occupational Disease Act.

The order of the court below is reversed, and the decision of the Workmen's Compensation Board is reinstated.