## Ispeky v. Bethlehem Steel Co.

*Henry Houck* and *W. J. Krencewicz*, for claimant.

*James F. Brown*, for defendant.

PALMER, J., February 23, 1960.—This is an appeal by claimant from an opinion and order of the Workmen's Compensation Board affirming the findings of fact, conclusions of law and order of the referee, find-

ing claimant has been 55 percent partially disabled from June 24, 1954.

The case stems from an industrial accident which occurred on November 21, 1952. On that day claimant, who had been working as a laborer for several months for defendant corporation, was riding on the step of a moving locomotive when he was squeezed between the train and a building column. He suffered lacerations of the mebranous urethra, neck of the bladder, abrasions of the forehead, right forearm and both sides of the pelvis, a fracture in the upper angle of the sacrum on the left side, a fracture of the horizontal ramus of the pubis on the right side and a fracture of the descending ramus of the pubis on the left side near the ischium. As a result of his injuries he has been afflicted with a genito-urinary difficulty, and in order to preclude a recurrence of a stricture, he is required to submit periodically to a dilatation of the urethra. He also has suffered a muscular atrophy of the right gluteal fold and a difference in circumference of the thigh and mid-calf. He favors his right leg and is afflicted with chronic sciatic neuropathy.

On February 16, 1953, the parties entered into a compensation agreement by the terms of which claimant received compensation at the rate of $30 per week beginning November 29, 1952.

Claimant returned to work on May 18, 1953, and continued at a salary equal to or greater than that which he had received prior to the accident, until April 24, 1954, when his employment was terminated because of reduction in force. During this latter period of employment he did not perform general laboring work as he had done prior to the accident, but rather did custodial work such as picking up papers, etc.

On March 30, 1954, defendant filed a petition to terminate the compensation payments on the ground claimant had recovered from his injuries. At the hear-

ing on this petition, it was agreed that if defendant's plant surgeon, Dr. Maurice P. Charnock, were called, he would testify that while he was unable to account for the subjective symptoms of which claimant was then complaining, on the basis of those symptoms he believed a finding of partial permanent disability not to exceed 20 percent would be warranted. On June 4, 1954, the referee entered an order awarding claimant compensation for 20 percent permanent partial disability from March 25, 1954. Claimant's appeal from this order was subsequently dismissed by the Workmen's Compensation Board.

Thereafter, on June 20, 1955, claimant filed a petition for modification alleging he had become totally disabled as of June 24, 1954. A referee heard testimony on this petition in April of 1956. At this hearing claimant testified he had been unable to do any work since June 24, 1954, because of continuous pain in his legs, spine and pelvic region.

Dr. J. J. Austra testified claimant was completely disabled, or at the most could do only some sedentary work if the pain did not bother him too much.

Dr. Joseph T. Marconis, a urologist, testified that claimant's pains could not be attributed to any pathology within the genito-urinary tract, although there was a stricture of the urethra which would require intermittent dilatations.

Dr. Charnock testified that the fractures were well healed and from his objective findings, he could not see any evidence of restriction or disability. On the other hand, there were certain subjective symptoms which, although he could not account for them, he felt should entitle claimant to a 20 percent disability. In this witness' opinion claimant is not a robust individual and not physically designed for heavy laboring. Apart from this factor, Dr. Charnock testified claimant can do any work consistent with his physical build.

The testimony of Dr. Charnock was supported by that of Dr. W. V. Dzurek, a specialist in X-ray and industrial rehabilitation.

Dr. Leonard F. Bush, a disinterested physician, testified that claimant was still having some difficulty as a result of the rupture of his urethra, but that all other examinations were negative except for a slight limitation of internal rotation of the right hip, and a slight tilt of the pelvis. In this witness' opinon, clamant was partially disabled in the neighborhood of 15 percent to 20 percent.

Based upon this testimony, the referee filed an opinion dismissing claimant's petition and continuing the payments based upon 20 percent permanent partial disability.

Claimant again appealed to the board which found it was "not quite ready to make a decision" and therefore set aside the referee's findings of fact, conclusions of law and order, and remanded the record to the referee for the appointment of an impartial specialist in the field of neurology and psychology.

Thereafter, on January 21, 1957, this impartial physician, Dr. Edward M. Whalen, testified. He stated there was no neurological disease or injury. There was a favoring of the right leg and a muscle atrophy due to the accident. He found claimant to be a person who is more apt to have difficulty in adjusting to pain than some other individuals and estimated claimant's percentage of permanent total disability as 25 percent. On cross-examination he testified that claimant was unable to do heavy, strenuous physical work but could do selective light work.

As a result of this testimony, the referee entered a new order on February 27, 1957, holding claimant to be totally disabled as of June 24, 1954.

On appeal by defendant to the board from this order, the latter, in an opinion filed September 11, 1957,

again remanded the record to the referee stating: "Our purpose in the appointment of Dr. Whalen was to clarify the record so as to remove any doubt, but after again reviewing and studying the record, we find we are not yet prepared to make a decision. The latest addition to the record made the issues only more complex and we are still unable to determine whether or not claimant is capable of performing 'selected light work' or 'light work generally.'"

A new impartial physician, Dr. Edward R. Janjigian, then testified at a hearing before the referee on March 28, 1958. Dr. Janjigian testified that: "The degree of disability is that this man can't do the heavy work that he was assigned to before. If you can find some sedentary job for this fellow, to sit around on a bunch of cushions and file cards or do things that do not involve physical effort, physical stress, he probably could do that type of work." When asked whether claimant could perform light work generally, the doctor answered that "it depends on what you might mean by general light work. He could work as an elevator operator if he could sit down on a cushioned chair, but he couldn't be a service station attendant, he could be a watchman if he rested each hour or so." When asked as to his opinion of the percentage of disability, Dr. Janjigian responded: "Physically impaired to do the type of work he was doing and the type he may be able to do, I'd say 50, 60, 65. I don't know. I'm no expert on percentages."

Following this testimony the referee, on March 19, 1959, filed an opinion in which he found claimant able to perform general light work and to suffer a partial disability of 55 percent from June 24, 1954.

Both sides appealed from the referee's decision. The board thereupon, on September 11, 1957, dismissed both appeals and sustained the findings of the referee. From this decision claimant has appealed to this Court.

Claimant had the burden of proving he was suffering a 100 percent disability as the result of the accident. In its opinion of September 11, 1957, the board found against him. It is therefore not our function to determine whether the board's opinion is supported by substantial, competent evidence. The sole question before us is whether the findings of fact are consistent with each other and with the conclusions of law and order, and whether the order can be sustained without a capricious disregard of competent evidence.[1]

While the medical testimony was conflicting, the determination of such conflicts and the weight to be given the testimony are exclusively for the compensation authorities.[2] It cannot be said that the failure of the referee and the board to accept as verity claimant's version of his disability constitutes a "capricious disregard of competent evidence" since the findings of fact are based upon competent evidence in the testimony.

We have examined the record with care and believe the findings of fact are consistent with each other and with the conclusions of law and order and further believe there has been no capricious disregard of competent evidence. The appeal must, therefore, be dismissed.

### Order

And now, February 23, 1960, the appeal is dismissed, and the award of the Workmen's Compensation Board is affirmed.

---

[1] Stampone v. Anthony Dally & Sons, Inc., 188 Pa. Superior Ct. 615; Sulewski v. Baldwin Locomotive Works, 168 Pa. Superior Ct. 346; Jaloenck v. Jarecki Manufacturing Co., 157 Pa. Superior Ct. 609; Plaugher v. American Viscose Corporation, 147 Pa. Superior Ct. 372; Witters v. Harrisburg Steel Corporation, 183 Pa. Superior Ct. 450.

[2] Wilkinson v. United Parcel Service of Pennsylvania, Inc., (No. 1), 158 Pa. Superior Ct. 22; Darmopray v. Budd Manufacturing Co., 169 Pa. Superior Ct. 200.

Formal order for calculation of award to be submitted by counsel.